# EXHIBIT

# H

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

IN RE:        Seroquel Products Liability Litigation

MDL DOCKET NO. 1769

This Document Relates to:

| | |
|---|---|
| Linda Guinn | 6:07-cv-10291 |
| Janice Burns | 6:07-cv-15959 |
| Richard Unger | 6:07-cv-15812 |
| Connie Curley | 6:07-cv-15701 |
| Linda Whittington | 6:07-cv-10475 |
| Eileen McAlexander | 6:07-cv-10360 |
| David Haller | 6:07-cv-15733 |

# DEFENDANTS' AND PLAINTIFF'S
# REQUESTED JURY INSTRUCTIONS

Plaintiff and Defendants, pursuant to this Court's pretrial orders, submit the attached joint set of jury instructions. The parties have attempted in good faith to reach agreement on requested jury instructions. Agreements and disagreements are indicated in the attached proposals by the denominations "Joint Requested Instruction" where there is agreement and "Plaintiff's Requested Instruction" or "Defendant's Requested Instruction" or where there is disagreement. In accordance with the Court's orders, the parties have provided legal authority for each requested instruction, and, where there is an objection to an instruction, a concise statement of that objection by the objecting party. The parties further note the following with respect to this joint set of instructions.

The parties submit the following instructions in light of this Court's prior rulings, without waiving their motions, objections, and responses thereto raised prior to and during the trial of each case. Each instruction is submitted as a separate request, and a separate ruling is requested for each instruction. The parties may also submit, individually or jointly, such supplemental instructions and/or verdict forms or withdraw or modify any of these instructions as may be required by further rulings of the Court prior to the trial, the presentation of evidence during the trial, the filing of additional requested instructions by an opposing party, and any ruling by the Court following the submission of those instructions.

In particular, once the Court has ruled on Defendants' pending motion for summary judgment, Defendants will submit additional instructions as appropriate in light of the Court's ruling. For example, without limiting the foregoing, Defendants have not submitted any instructions that might bear on federal preemption but will do so if this Court's ruling on Defendants' motion for summary judgment asserts that there is a genuine issue of material fact relating to preemption.

By submitting requested jury instructions regarding Plaintiff's claims, Defendants do not concede that those claims, or any issues relating to those claims, can or should be properly submitted to the jury. In addition, these requested Jury Instructions are made without waiving Defendants' motions and objections regarding specific claims or damages.

For example, without limiting the foregoing, Defendants submit their instructions on Plaintiff's claims for design defects and inadequate warning without waiving their

arguments that these claims are preempted by federal law. Similarly, Defendants also submit requested instructions as to Plaintiff's punitive damages claim, without waiving their contentions that, among other things, Plaintiff is not entitled to punitive damages against Defendants as a matter of Florida law, the claim for punitive damages should not be submitted to the jury, and any verdict against Defendants, particularly one resulting from the Court's reliance solely upon the Florida Standard Jury Instructions (Civil) entitled, "PD, Punitive Damages," would violate Defendants' rights under the Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution, and Defendants' rights under article I, section 2 (Basic Rights), article I, section 9 (Due Process), article I, section 17 (Excessive Punishments), and article I, section 21 (Access to Courts) of the Florida Constitution. .

Finally, Defendants request that the jury be given a set of these written charges, including the preliminary charge, at the time they are given to the jury by the Court.

Respectfully submitted,


/s/ Richard N. Laminack
Richard N. Laminack
Thomas W. Pirtle
Buffy K. Martines
Laminack, Pirtle & Martines
5020 Montrose Blvd., 9th Floor
Houston, Texas 77006
(713) 292-2750 Telephone
(713)292-2755 Facsimile
rickl@lpm-triallaw.com
tomp@lpm-triallaw.com
buffym@lpm-triallaw.com
**Attorneys for Linda Guinn**

3

14390384.4

/s/ Fletcher V. Trammell
F. Kenneth Bailey, Jr.
K. Camp Bailey
Fletcher V. Trammell
Robert W. Cowan
Bailey Perrin Bailey
440 Louisiana St., Suite 2100
Houston, Texas 77002
(713) 425-7100 Telephone
(713) 425-7101 Facsimile
kbailey@bpblaw.com
cbailey@bpblaw.com
ftrammell@bpblaw.com
rcowan@bpblaw.com
***Attorneys for Above-Captioned Plaintiffs***
***Co-Lead Counsel for Plaintiffs***


Larry M. Roth
The Law Offices of Larry M. Roth
1615 Edgewater Dr., Suite 180
Orlando, Florida 32804
(407) 872-2239 Telephone
(407) 872-6927 Facsimile
***Plaintiffs' Liaison Counsel***

/s/ Steven B. Weisburd
Steven B. Weisburd
David Venderbush
DECHERT LLP
300 West 6th Street, Suite 1850
Austin, TX 78701
Telephone: (512) 394-3000
Facsimile: (512) 394-3001
steven.weisburd@dechert.com


Stephen J. McConnell
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19103
Telephone: (215) 994-4000

4

Facsimile: (215) 994-2222
stephen.mcconnell@dechert.com

/s/ Chris S. Coutroulis
Chris S. Coutroulis (Fla. Bar No. 300705)
Robert L. Ciotti (Fla. Bar No. 333141)
CARLTON FIELDS, P.A.
Corporate Center Three
  at International Plaza
4221 W. Boy Scout Blvd.
Tampa, FL  22607
Telephone: (813) 223-7000
Facsimile: (813) 229-4133
ccoutroulis@carltonfields.com
**_Counsel for AstraZeneca LP and
AstraZeneca Pharmaceuticals LP_**

5

**JOINT REQUESTED INSTRUCTION NO. 1**
**(Consideration of the Evidence – Duty to Follow Instructions –**
**Corporate Party Involved)**

In deciding the case you must follow and apply all of the law as I explain it to you, whether you agree with that law or not; and you must not let your decision be influenced in any way by sympathy, or by prejudice, for or against anyone.

The fact that a corporation is involved as a party must not affect your decision in any way. A corporation and all other persons stand equal before the law and must be dealt with as equals in a court of justice. When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.

In your deliberations you should consider only the evidence—that is, the testimony of the witnesses and the exhibits I have admitted in the record—but as you consider the evidence, both direct and circumstantial, you may make deductions and reach conclusions which reason and common sense lead you to make. "Direct evidence" is the testimony of one who asserts actual knowledge of a fact, such as an eye witness. "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute. The law makes no distinction between the weight you may give to either direct or circumstantial evidence.

Remember that anything the lawyers say is not evidence in the case. And, except for my instructions to you on the law, you should disregard anything I may have said

6

14390384.4

during the trial in arriving at your decision concerning the facts.   It is your own recollection and interpretation of the evidence that controls.

*Authority*: Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), Basic Instructions  2.2.

**Given**                     _____
**Given as Modified**         _____
**Denied**                    _____
**Withdrawn**                 _____

7

14390384.4

## JOINT REQUESTED INSTRUCTION NO. 2
### (Credibility of Witnesses)

Now, in saying that you must <u>consider</u> all of the evidence, I do not mean that you must <u>accept</u> all of the evidence as true or accurate.  You should decide whether you believe what each witness had to say, and how important that testimony was.  In making that decision you may believe or disbelieve any witness, in whole or in part.  Also, the number of witnesses testifying concerning any particular dispute is not controlling.

In deciding whether you believe or do not believe any witness I suggest that you ask yourself a few questions:  Did the witness impress you as one who was telling the truth?  Did the witness have any particular reason not to tell the truth?  Did the witness have a personal interest in the outcome of the case?  Did the witness seem to have a good memory?  Did the witness have the opportunity and ability to observe accurately the things he or she testified about?  Did the witness appear to understand the questions clearly and answer them directly?  Did the witness' testimony differ from other testimony or other evidence?

*Authority*: Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), Basic Instructions 3.

**Given**             _____
**Given as Modified**  _____
**Denied**             _____
**Withdrawn**          _____

8

14390384.4

## JOINT REQUESTED INSTRUCTION NO. 3
### (Impeachment of Witnesses – Inconsistent Statement)

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact; or, whether there was evidence that at some other time the witness said or did something, or failed to say or do something, which was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people naturally tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

*Authority*: Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), Basic Instructions 4.1

**Given** _____
**Given as Modified** _____
**Denied** _____
**Withdrawn** _____

9

14390384.4

**JOINT REQUESTED INSTRUCTION NO. 4**
**(Expert Witnesses – General Instruction)**

When knowledge of a technical subject matter might be helpful to the jury, a person having special training or experience in that technical field is permitted to state an opinion concerning those technical matters.

Merely because such a witness has expressed an opinion, however, does not mean that you must accept that opinion. The same as with any other witness, it is up to you to decide whether to rely upon it.

*Authority*: Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), Basic Instructions 5.1.

**Given**             _____
**Given as Modified**  _____
**Denied**            _____
**Withdrawn**         _____

14390384.4

**JOINT REQUESTED INSTRUCTION NO. 5**
**(Burden Of Proof – When There Are Multiple Claims Or**
**When Both Plaintiff And Defendant Have Burden Of Proof)[1]**

In this case each party asserting a claim or a defense has the responsibility to prove every essential part of the claim or defense by a "preponderance of the evidence." This is sometimes called the "burden of proof" or the "burden of persuasion."  On the punitive damages claim, Plaintiff must prove entitlement to punitive damages by "clear and convincing" evidence, and Plaintiff must prove the amount of punitive damages, if any, by a preponderance of the evidence.

A "preponderance of the evidence" simply means an amount of evidence that is enough to persuade you that a claim or contention is more likely true than not true. "Clear and convincing evidence" is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.

When more than one claim is involved, and when more than one defense is asserted, you should consider each claim and each defense separately; but in deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who may have called them, and all of the exhibits received in evidence, regardless of who may have produced them.

---

[1] The instructions refer to "Defendant" in the singular. Two defendants are named, AstraZeneca LP and AstraZeneca Pharmaceuticals LP.  The parties have listed as a legal issue whether both are proper parties or whether AstraZeneca LP should be dropped as a defendant.  The parties intend to discuss this issue further in an attempt to reach agreement on the proper defendant(s). The use of the singular in these instructions is in no way meant to imply that these separate AstraZeneca legal entities are one entity, which they are not, or that the act of either entity constitutes, factually or legally, the act of the other entity.

11

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, or by clear and convincing evidence for the punitive damages claim, you should find against the party making that claim or contention.

*Authority*: Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), Basic Instructions 6.2 (modified); Slomowitz v. Walker, 429 So. 2d 797 (Fla. 4th DCA 1983) (clear and convincing); Florida Standard Jury Instructions in Civil Cases ("FSJI") PD2(2) (clear and convincing).

**Given**                         _____
**Given as Modified**             _____
**Denied**                        _____
**Withdrawn**                     _____

12

**JOINT REQUESTED INSTRUCTION NO. 6**
**(Strict Liability for Failure to Warn - Prescription Medicine)**

In this case, the Plaintiff claims damages for personal injuries alleged to have been caused by inadequate warnings provided by the Defendant to the Plaintiff's prescribing medical providers about the risks of Seroquel of which Plaintiff complains.

In order to recover on this failure to warn claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the Defendant manufactured and sold the prescription medicine Seroquel ingested by the Plaintiff;

Second: That the Defendant failed to provide adequate warnings and risk disclosures to the Plaintiff's prescribing medical providers of risks that were known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time the Plaintiff ingested Seroquel;

Third: That the risks about which the Plaintiff complains were not open and obvious; and

Fourth: That the failure to warn was a "legal cause" of the injury complained of by the Plaintiff.

With regard to the issue of "legal cause," a failure to warn is a legal cause of injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such loss, injury or damage, so that it can reasonably be said that, but for the failure to warn, the injury or damage complained of

13

would not have occurred.  In order to be regarded as legal cause of injury or damage, a

failure to warn need not be the only cause.  A failure to warn may be a legal cause of

injury or damage even though it operates in combination with the act of another, some

natural cause, or some other cause if such other cause occurs at the same time as the

failure to warn and if the failure to warn contributes substantially to producing such

injury or damage.

*Authority*:          Eleventh Circuit Pattern Jury Instructions (Civ.) (2005), State Claims 2.1
                   (modified to apply to prescription drug and as per stipulated legal issues);
                   Ferayorni v. Hyundai Motor Co., 711 So. 2d 1167, 1172 (Fla. 4th DCA 1998);
                   Felix v. Hoffmann-LaRoche, Inc., 540 So. 2d 102 (Fla. 1989) (prescription drug
                   manufacturer's duty to warn runs to prescribing physician, not to plaintiff); Fla.
                   Standard Jury Instruction 5.1(a), (b), 5.2(a), (b) (Florida standard jury charge for
                   "legal cause" adapted to cover failure to warn and other claims).

**Given**                          _____
**Given as Modified**              _____
**Denied**                         _____
**Withdrawn**                      _____

14

**JOINT  REQUESTED INSTRUCTION NO. 7**
**(Learned Intermediary Doctrine – Duty to Warn)**

The "learned intermediary" doctrine, on which I am about to instruct you, applies

to the claims asserted by Plaintiff in this case based on any inadequate warning theory,

including Plaintiff's claims for strict liability/failure to warn, negligent failure to warn,

fraud, and negligent misrepresentation.

As a manufacturer of the prescription medicine Seroquel, the Defendant's duty to

warn of the risks of Seroquel runs to those doctors and medical providers who prescribe

the medicine, not to those who ingest the medicine, such as Plaintiff.  This is so because

the prescribing medical professional, acting as a learned intermediary between the

manufacturer and the patient, weighs the potential benefits of the drug against its risks in

deciding whether to recommend and prescribe the drug to meet the particular patient's

needs.

Consequently, the adequacy of the warnings provided by the Defendant must be

judged in light of the fact that they are provided to prescribing medical professionals with

medical knowledge and training, and not to laypersons.

Further, it is a matter of the prescribing medical professional's medical judgment

whether, and if so how, to inform patients of the risks of taking the prescribed drugs.

Even if the manufacturer knows prescribers are not adequately relaying warnings to

patients, the manufacturer's duty to warn still runs only to the prescribers and not their

patients.

*Authority*:    Upjohn v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990); Felix v. Hoffmann
LaRoche, Inc., 540 So. 2d 102, 104-05 (Fla. 1989); Buckner v. Allergan
Pharmaceuticals, Inc., 400 So.2d 820, 821-24 (Fla. 5th DCA 1981); Colville v.

15

Pharmacia & Upjohn Co., LLC, 565 F.Supp.2d 1314, 1321 (N.D. Fla. 2008); Beale v. Biomet, 492 F.Supp.2d 1360, 1366-67, 1370-71 (S.D. Fla. 2007); Baker v. Danek Med., 35 F. Supp. 2d 875, 881 (N.D. Fla. 1998); Savage v. Danek Med., 31 F. Supp. 2d 980, 984-85 (M.D. Fla. 1999).

**Given** _____
**Given as Modified** _____
**Denied** _____
**Withdrawn** _____

16

**DEFENDANTS' REQUESTED INSTRUCTION NO. 8**
**(Adequacy of Warnings – Prescription Medicine)**

The warnings and risk disclosures provided by a manufacturer of a prescription

medicine, such as Seroquel, are adequate if they are sufficient to put physicians and other

prescribing medical professionals on notice of the possibility that someone who ingests

the drug may experience the harm or side effects of which Plaintiff complains.

Authority:    Upjohn Co. v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990); Bogle v. Sofamor
              Danek Group, No. 95-CIV-8646, 1999 WL 1132313, at *5 (S.D. Fla. Apr. 9,
              1999); Broderick v. Sofamor Danek Group, No. 95-CIV-8644, 1999 WL
              1062135, at *5 (S.D. Fla. Apr. 9, 1999); accord Felix v. Hoffman-LaRoche, Inc.,
              540 So.2d 102, 103 (Fla. 1989); Beale v. Biomet, 492 F. Supp. 2d 1360, 1368-69
              (S.D. Fla. 2007); E.R. Squibb & Sons, Inc. v. Farnes, 697 So. 2d 825, 827 (Fla.
              1997).

**Plaintiff's objection: Plaintiff objects to this instruction because it fails to incorporate
              factors that the jury may consider for determining the legal adequacy of a
              prescription drug warning – i.e., that the warning be accurate, clear, and
              unambiguous – as articulated by the Florida Supreme Court in Felix v.
              Hoffman-LaRoche, Inc., 540 So.2d 102, 103 (Fla. 1989).**

17

14390384.4

**Given** _____

**Given as Modified** _____

**Denied** _____

**Withdrawn** _____

14390384.4

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 9**
**(Adequacy of Warnings – Prescription Medicine)**

In determining whether Defendant conveyed "adequate" warnings to Plaintiff's

prescribers regarding the risks associated with Seroquel, you may consider factors such

as the accuracy, clarity and unambiguousness of such warnings.

Authority:     Upjohn Co. v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990); Felix v. Hoffman-
               LaRoche, Inc., 540 So.2d 102, 103 (Fla. 1989); Buckner v. Allergan Pharms.,
               400 So. 2d 820, 822 (Fla. Ct. App. [5th Dist.] 1981).

**Defendants' objection: This proposed instruction has no basis in the Florida or**
**Eleventh Circuit standard jury instructions, nor does it accurately state Florida**
**law. In fact, it misstates the law, modifying, conflating an confusing legal standards**
**and principles in a manner that will lead to jury confusing and misdirection. Under**
**Upjohn the question to be submitted to the jury is as stated in Defendants' proposed**
**instruction on adequacy of labeling.    Plaintiff's proposed instruction incorrectly**
**interjects the higher "clear, accurate, unambiguous" legal standard applicable to**
**the Court taking issues away from the jury and finding the warnings given legally**
**adequate as a matter of law on a defense motion for summary judgment -- and**
**thereby unfairly slants the jury's factual determinations in a way that threatens to**
**result in jury confusion and misdirection. Defendants further object that this**
**proposed instruction misstates the law and is unfairly one-sided and misdirected. It**
**refers only to "warnings" and not also risk disclosures in a way that threatens to**
**mislead the jury, contrary to Upjohn, that risk disclosures not in the "warnings"**
**section of FDA-approved labeling are not legally adequate under Florida law. The**

proposed instruction is also legally inaccurate and misleading as phrased by implying in its first clause that there is a duty under Florida law to provide "warnings" of any conceivable risks that might be "associated with" an FDA-approved drug, which is overbroad and unsupported by Florida law and imports a standard that threatens to mislead the jury

**Given** _____
**Given as Modified** _____
**Denied** _____
**Withdrawn** _____

20

## PLAINTIFF'S REQUESTED INSTRUCTION NO. 10
### (Adequacy of Warnings – Labeling Regulations)

In considering the adequacy of any warnings that Defendant provided to Plaintiff's prescribing medical providers about the risks of Seroquel, you may consider written, printed or graphic information provided to Plaintiff's prescribers by Defendant or its representatives about Seroquel other than the actual product label or package insert accompanying the Seroquel package. That is because prescription drug "labeling" includes not only written, printed, or graphic materials on the product label or package insert and other materials that accompany the drug, but also written, printed or graphic materials that do not physically accompany or are not attached to the product itself, but which supplement or explain and are textually related to the product label or package insert (for example, prescription drug advertising, promotional materials, and "Dear Doctor" letters).

*Authority:*      21 U.S.C. § 321(m), <u>Kordel v. United States</u>, 335 U.S. 345, 349-50 (1948); <u>Walls v. Armour Pharm. Co.</u>, 832 F. Supp. 1467, 1482-83 (M.D. Fla. 1993); <u>see also O'Neal v. Smithkline Beecham Corp.</u>, 551 F. Supp. 2d 993, 1009 (E.D. Cal. 2008).

***Defendants' objection***: **This proposed instruction has no basis in Florida law, and is not supported in any way by the Florida or Eleventh Circuit pattern instructions or case law under Florida law. In addition, it is drafted in such broad, loose and imprecise language, as well as highly technical language, derived from federal**

14390384.4

regulations, that it threatens to confuse and misdirect the jury.  Moreover, this instruction is confusing and one-sided, and if an instruction is given it should make clear that the "warnings" to be considered under Florida law include disclosures made in the entirety of the physician labeling, not simply in the "Warnings" section of that labeling, in addition to the other printed matter referred to in this proposed instruction.

Given                          _____
Given as Modified        _____
Denied                        _____
Withdrawn                  _____

**PLAINTIFF'S REQUESTED INSTRUCTION NO. 11**
**(Adequacy of Warnings – Dilution and Undermining of Warnings)**

In considering the adequacy of any warnings that Defendant provided to

Plaintiff's prescribing medical providers about the risks of Seroquel, you may consider

whether the alleged misstatements or misrepresentations about Seroquel's risks that were

communicated to Plaintiff's prescribing medical providers by the Defendant or its

representatives had the effect of contradicting or negating the warnings given.

*Authority:*    Zanzuri v. G.D. Searle & Co., 748 F. Supp. 1511, 1518 (S.D. Fla. 1990);
see also Beale v. Biomet, Inc., 492 F. Supp. 2d 1360, 1377-78 (S.D. Fla.
2007) (recognizing dilution exception to learned intermediary rule); In re
Zyprexa Prods. Liab. Litig., 489 F. Supp. 2d 230, 279 (E.D.N.Y. 2006).

*Defendants' objection*:  **This proposed instruction misstates the law in multiple
respects, is confusing and unfairly one-sided, and is certain to
misdirect and mislead the jury.  First, it improperly assumes that
Florida law recognizes the so-called "overpromotion" exception to the
learned intermediary doctrine, which is not correct and in fact
contrary to the <u>Beale</u> case cited by Plaintiff, which notes that no
Florida court has adopted and applied such an exception.  See <u>Beale</u>,
<u>supra</u>, at p. 1377.  Second, even if Florida law did recognize the
exception recognized in some other non-Florida jurisdictions,
Plaintiff's proposed instruction is drafted in a confusing and
overbroad fashion with terms that are unsupported or vague (e.g.,
"errors"; "effect of diluting, undermining, or otherwise contradicting
or negating") that it misstates the law and threatens jury confusion in
this way as well.  (On this point, the <u>Beale</u> case references only
deceptive promotional activity that contradicts or negates the
warnings and risk disclosures given.)  Third, critically, the proposed
instruction is particularly objectionable, misstates the law, and is
certain to mislead and misdirect the jury, in that it fails to contain the**

23

critical additional component of any such "overpromotion" analysis, as dispositive in the Beale case, that the alleged overpromotion in allegedly acting to contradict or negate the warnings/disclosures given is potentially relevant and germane only to the extent that Plaintiff proves that the Plaintiff's prescribers were actually exposed to, influenced by, and relied upon, the alleged overpromotion (misstatements or misrepresentations) in deciding to prescribe Seroquel for Plaintiff.  See Beale, supra at 1377.  Accordingly, while no aspect of this instruction should be given, Defendants emphasize that it is essential that, if given over Defendants' objection, any such instruction must clarify that the jury may consider the alleged overpromotion only "to the extent that you find by a preponderance of the evidence that the Plaintiff's prescribing medical providers were exposed to, influenced by, and relied upon, such alleged [misstatements or misrepresentations] in deciding to prescribe Seroquel for Plaintiff when they otherwise would not have done do in the exercise of their independent medical judgment."

Given                         _____
Given as Modified             _____
Denied                        _____
Withdrawn                     _____

24

**DEFENDANTS' REQUESTED INSTRUCTION NO. 12**
**(Open and Obvious Risks/Commonly Known Risks)**

The Defendant did not have a duty to warn of open and obvious risks posed by

Seroquel, or risks that were commonly known to prescribing medical professionals.

*Authority*:   Kohler Co. v. Marcotte, 907 So. 2d 596, 600 (Fla. 3d DCA 2005); Insua v.
JD/BBJ, LLC, 913 So.2d 1262, 1264 (Fla. 4th DCA 2005); John Morrel & Co. v.
Royal Caribbean Cruises, Ltd., 534 F.Supp.2d 1345, 1351-52 (S.D. Fla. 2008);
Lake v. Tenneco, Inc., 2007 WL 4482567 at *2-3 (M.D. Fla. Dec. 17, 2007); see
also Meridia Prods. Liab. Litig. v. Abbott Labs, 447 F.3d 861, 867 (6th Cir.
2006); Eleventh Circuit Pattern Jury Instr. (Civ.) (2005), State Claims 2.1 (no
duty to warn of open and obvious risks.

*Plaintiff's objection*:   **Plaintiff objects to this instruction as unsupported by either the
Eleventh Circuit Pattern Jury Instructions or the Florida Standard Jury
Instructions. It is also repetitive of a legal element already stated in the
Joint Strict Liability Failure to Warn Instruction. It is also slanted towards
Defendants, and invites jury confusion.**

**Given**          _____
**Given as Modified** _____
**Denied**         _____

25

14390384.4

**Withdrawn**          _____

14390384.4

## JOINT REQUESTED INSTRUCTION NO. 13
### (Extent of Duty to Warn/State-of-the-Art)

In determining the adequacy of the warnings and risk disclosures given by the Defendant to the Plaintiff's prescribers, you must consider the state of the art of scientific and technical knowledge and other circumstances that existed when the warnings and disclosures were given and plaintiff ingested the medicine, and not at any later point in time.

*Authority:*   Ferayorni v. Hyundai Motor Co., 711 So.2d 1167, 1172 (Fla. 4th DCA 1998); Hethcoat v. Chevron Oil Co., 364 So. 2d 1243, 1244-45 (Fla. 1st DCA 1978), quashed on other grounds, 380 So. 2d 1035 (Fla. 1980)("To hold [that] every part subject to repair at grave risk must have a posted warning would result in an impossible and even undesirable situation."); Brown v. General Motors, 355 F.2d 814, 818 (4th Cir. 1966) ("a manufacturer is not obligated to . . . warn as to all possible dangers"); Clark v. Boeing Co., 395 So. 2d 1226, 1228 (Fla. 3d DCA 1981 ("It is not itself a breach of duty to supply materials which are reasonably safe and customarily used, even though the material might conceivably be made more safe"); Builders Shoring & Scaffolding v. Schmidt, 411 So. 2d 1004 (Fla. 5th DCA 1982); Husky Indus. v. Black, 434 So. 2d 988 (Fla. 4th DCA 1983); see also § 768.1257 , Fla. Stat.; E.R. Squibb & Sons, Inc. v. Farnes, 697 So.2d 825, 828 (Fla. 1997); Felix v. Hoffman-LaRoche, Inc., 540 So.2d 102, 104 (Fla. 1989).

**Given**          _____
**Given as Modified**  _____
**Denied**         _____
**Withdrawn**      _____

14390384.4

**DEFENDANTS' REQUESTED INSTRUCTION NO. 14**
**(Legal Cause – Learned Intermediary)**

In this case, the Plaintiff alleges that she suffered injury as a result of allegedly inadequate warnings about the risks of Seroquel provided by the Defendant to the Plaintiff's prescribing medical providers, which allegedly affected the decisions of the Plaintiff's medical providers to prescribe Seroquel for the Plaintiff. For any inadequate warnings about the risks of Seroquel to be a legal cause of the alleged injury, the Plaintiff must prove that but for the inadequacy of the warnings given, the Plaintiff's prescribing medical providers would not have prescribed Seroquel for the Plaintiff.

*Authority*:   See Porter v. Eli Lilly & Co., 2008 WL 4638115, *1 (11th Cir. Sept. 9, 2008); Ackermann v. Wyeth Pharms., 526 F.3d 203, 208 (5th Cir. 2008); accord Alexander v. Danek Med., Inc., 37 F. Supp. 2d 1346, 1350 (M.D. Fla. 1999) (Florida law); Timmons v. Purdue Pharma Co., 2006 WL 263602, at *4 (M.D. Fla. Feb. 2, 2006) (Florida law); Edgar v. Danek Medical, Inc., 1999 WL 1054864, at *6 (M.D. Fla. Mar. 31, 1999) (Florida law); Beale v. Biomet, Inc., 492 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007) (Florida law); Wilson v. Danek Med., Inc., 1999 WL 1062129, at *3-4 (M.D. Fla. Mar 29, 1999) (Florida law). Also compare Porter, supra, 2008 WL 4638115, *1 (applying "but for" standard under Georgia law); with Beale, 492 F. Supp. 2d at 1367 (noting that "Georgia's learned intermediary doctrine" is "the same doctrine applied in Florida cases"). And compare Ackermann, 526 F.3d at 208 (applying "but for" standard under Texas law); with Felix v. Hoffman-LaRoche, Inc., 540 So. 2d 102, 104 (Fla. 1989) (adopting the learned intermediary doctrine under Florida law while citing and following Reyes v. Wyeth Labs, 498 F.2d 1264, 1276 (5th Cir.), cert. denied, 419 U.S. 1096 (1974), applying Texas law).

*Plaintiff's objection*: **Plaintiff objects on grounds that the instruction improperly attempts to shift the burden on the learned intermediary defense to the Plaintiff. Florida law recognizes the learned intermediary doctrine as a defense, and Plaintiff has no burden of proof under that doctrine. Defendant has also pled the learned intermediary doctrine as an affirmative defense. Additionally, or in the alternative, the causation standards under Florida law are repeatedly stated in each of the claims' instructions already set forth, rendering this instruction cumulative, unnecessary, and slanted**

28

against Plaintiff, and would lead to jury confusion on the issue of causation and burden of proof.

Given          _____

Given as Modified   _____

Denied        _____

Withdrawn     _____

29

**JOINT REQUESTED INSTRUCTION NO. 15**
**(Legal Cause – Learned Intermediary**
**Prior or Independent Knowledge of Risk)**

Any failure of the Defendant to provide adequate warnings of the risks of

Seroquel is not a legal cause of the Plaintiff's injury if you find that the Plaintiff's

prescribing medical providers had substantially the same knowledge of the risks of

Seroquel that an adequate warning would have provided.

*Authority*:   Felix v. Hoffman-LaRoche, Inc., 540 So.2d 102, 103 (Fla. 1989); Christopher v.
Cutter Labs., 53 F.3d 1184 (11th Cir. 1995); Beale v. Biomet Inc., 492 F. Supp.
2d 1360, 1368-69 (S.D. Fla. 2007).

**Given** _____
**Given as Modified** _____
**Denied** _____
**Withdrawn** _____

30

**JOINT REQUESTED INSTRUCTION NO. 16**
**(Strict Liability for Defective Design - Prescription Medicine)**

In this case, the Plaintiff also claims damages for personal injuries alleged to have been caused by a defective condition in the design of Seroquel that allegedly made it unreasonably dangerous to anyone who ingested the prescription medicine, including the Plaintiff.

In order to recover on this design defect claim, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First:     That the Defendant manufactured and sold the prescription medicine Seroquel ingested by the Plaintiff;

Second:     That, at the time of manufacture and sale, Seroquel was in a defective condition because of a defect in its design that made it unreasonably dangerous to those who ingest it;

Third:     That the Seroquel that the Plaintiff ingested was expected to and did reach Plaintiff without substantial change in its condition as of the time the Defendant manufactured and sold it; and

Fourth:     That the defective condition in Seroquel's design was a "legal cause" of the injury complained of by the Plaintiff.

A product is unreasonably dangerous to users because of a defective condition in its design if, by reason of a defect in its design, the risk of danger in the design outweighs the benefits.

31

With regard to the issue of "legal cause," a defective condition in the design of Seroquel is a legal cause of injury or damage if it directly and in natural and continuous sequence produces or contributes substantially to producing such injury or damage, so that it can reasonably be said that, but for the defective condition in the design, the injury or damage complained of would not have occurred.   In order to be regarded as legal cause of injury or damage, the defective condition in the design need not be the only cause.   The defective condition in the design may be a legal cause of injury or damage even though it operates in combination with the act of another, some natural cause, or some other cause if such other cause occurs at the same time as the defective condition in the design and if the defective condition in the design contributes substantially to producing such injury or damage.

*Authority*:   Eleventh Circuit Pattern Jury Instruction (Civ.) (2005), State Claims 2.1 (modified to apply to prescription drug and to eliminate stipulated issues); Fla. Standard Jury Instr. PL 5 (as to standard for design defect); Fla. Standard Jury Instruction 5.1(a), (b), 5.2(a), (b) (Florida standard jury charge for "legal cause" adapted to cover failure to warn and other claims).

**Given**          _____
**Given as Modified**   _____
**Denied**         _____
**Withdrawn**      _____

32

14390384.4

**DEFENDANTS' REQUESTED INSTRUCTION NO. 17**
**(Risk/Benefit Standard for Prescription Medicine)**

The risks of danger in the design of Seroquel do not outweigh the benefits unless

you find that, at the time the Plaintiff was prescribed and ingested Seroquel, the

foreseeable risks posed by Seroquel were sufficiently great in relation to its foreseeable

therapeutic benefits such that no reasonable healthcare provider, knowing of such

foreseeable risks and therapeutic benefits, would prescribe Seroquel for any class of

patients.

*Authority*:   RESTATEMENT (THIRD) TORTS:  PRODUCTS LIABILITY § 6(c).  Although the
Third Restatement test has not been expressly applied by any Florida decision, it
constitutes a specific application of the recognized risk/utility test to prescription
products and its substance was applied by the Southern District of Florida in also
Beale v. Biomet Inc., 492 F. Supp. 2d 1360, 1369 n. 11 (S.D. Fla. 2007) (defense
judgment on Florida design defect claim where plaintiffs admitted that the
defendant's medical product was appropriate for some patients).  Defendants
request this instruction in order to preserve their right to argue for adoption of
this test.. Maiz v. Virani, 253 F3d 641, 677 (11th Cir. 2001)

*Plaintiff's objection:* **RESTATEMENT (THIRD) TORTS has not been adopted by the**
**Florida Supreme Court for design defect claims.  This instructions is also**
**unsupported by either the Eleventh Circuit Pattern Jury Instructions or the Florida**
**Standard Jury Instructions  It is also slanted towards the Defendant, and may cause**
**jury confusion.**

33

**Given**

**Given as Modified** _____

**Denied** _____

**Withdrawn** _____

**DEFENDANTS' REQUESTED INSTRUCTION NO. 18**
**(Reasonably Safer Alternative Design)**

To prevail on the Plaintiff's claim of design defect, the Plaintiff must prove that

the foreseeable risks of harm posed by Seroquel could have been reduced or avoided by

the adoption of a reasonable alternative design for Seroquel, and the failure of the

Defendant to use such a reasonably safer alternative design renders Seroquel

unreasonably dangerous.

*Authority*:     This proposed instruction is based on the standard under Florida law adopted by the Eleventh Circuit in Edic v. Century Prods. Co., 364 F.3d 1276, 1279-80 n.3 (11th Cir. 2004) (Under Florida law, a product is defective in design when risks could be reduced or avoided by reasonable alternative design). See also Scheman-Gonzalez v. Saber Mfg. Co., 816 So. 2d 1133 (Fla. 4th DCA 2002) (same; recognizing REST. (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, formulation of the risk-benefit test); Kohler v. Marcotte, 907 So. 2d 596, 599-600 (Fla. App. 2005); Warren ex rel. Brassell v. K-Mart Corp., 765 So. 2d 235, 237038 (Fla. App. 2000); see also Restatement (Second) Torts §402A; West v. Caterpillar Tractor Co., 336 So.2d 80, 87 (Fla. 1976) (strict liability must be based on defect in product, not on risks inherent in the nature of the product itself); Husky Indus., Inc. v. Black, 434 So.2d 988 (Fla. 4th DCA 1983); Royal v. Black & Decker, 205 So.2d 307 (Fla. 3d DCA 1967); Timmons v. Purdue Pharma Co., 2006 WL 263602, at *3-4 (M.D. Fla. Feb. 2, 2006) (summary judgment granted where plaintiff failed to point to defect in the chemical composition of drug); Bruner v. Anheuser-Busch, Inc., 153 F.Supp.2d 1358, 1360 (S.D. Fla. 2001) (claim that beer was defective dismissed where plaintiff had failed to allege there was a safer design for beer), aff'd, 31 Fed. Appx. 932 (11th Cir. Jan. 18, 2002); Cornelius v. Cain, 2004 WL 48102 (Fla. Cir. Ct. Jan. 5, 2004) (drug did not have design defect where plaintiff failed to point to alternative design); Marzullo v. Crosman Corp., 289 F. Supp. 2d 1337 (M.D. Fla. 2003) (design defect claim failed where plaintiff failed to allege gun failed to perform function for which it was designed or alternative design would have enabled gun to fire with same velocity in a safer manner); accord Coulson v. DeAngelo, 493 So.2d 98, 99 (Fla. 4th DCA 1986); Trespalacios v. Valor Corp., 486 So. 2d 649, 650 (Fla. 3d DCA 1986); Shipman v. Jennings Firearms, Inc., 791 F.2d 1532, 1533-34 (11th Cir. 1986).

**Plaintiff's objection:  RESTATEMENT (THIRD) TORTS  has not been adopted by the Florida Supreme Court for design defect claims.  This instructions is also unsupported by either the Eleventh Circuit Pattern Jury Instructions or the Florida Standard Jury Instructions  It is also slanted towards the Defendant, and may cause jury confusion.**

14390384.4

**Given**                        _____
**Given as Modified**            _____
**Denied**                       _____
**Withdrawn**                    _____

14390384.4

## JOINT REQUESTED INSTRUCTION NO. 19
### (Design Defect – State of the Art)

In making your determination as to whether the Seroquel that Plaintiff ingested

was defective by reason of its design, you may consider only the state of the art of

scientific and technical knowledge and other circumstances that existed at the time the

Seroquel that the Plaintiff ingested was manufactured and sold, and not at any later point

in time.

*Authority*:     § 768.1257, Fla. Stat.; E.R. Squibb & Sons, Inc. v. Farnes, 697 So. 2d 825 (Fla. 1997)

**Given**                    _____
**Given as Modified**        _____
**Denied**                   _____
**Withdrawn**                _____

37

14390384.4

## JOINT[2] REQUESTED INSTRUCTION NO. 20
### (Negligence)

In this case, the Plaintiff also claims that the Defendant was negligent and that

such negligence was a legal cause of damage sustained by the Plaintiff.  Specifically, the

Plaintiff alleges that the Defendant acted negligently in designing Seroquel and providing

adequate warnings to Plaintiff's prescribing medical providers of the risks about which

Plaintiff complains.

In order to prevail on this claim, the Plaintiff must prove both of the following

facts by a preponderance of the evidence:

First:        That the Defendant was "negligent" in designing Seroquel or

              "negligent" in providing adequate warnings about Seroquel to

              Plaintiff's prescribing medical providers;


[Second:      That as a result of the Defendant's negligence, the Seroquel

              ingested by Plaintiff was defective by reason of its design or

              warnings and]

Third:        That such negligence was a "legal cause" of the injury complained

              of by the Plaintiff.

---

[2] While Defendants are in agreement with the overall form of the instruction, Defendants believe that no
instruction on negligence should be given for the reasons set forth in Defendants' objection below.  If the
instruction is given, Defendants believe the instruction should be given with the bracketed language.  As
reflected in Plaintiff's objection below, Plaintiff believes the instruction should be given without the
bracketed language.

14390384.4

"Negligence" is the failure to use reasonable care.  Reasonable care is that degree of care that a reasonably careful person would use under like circumstances.  Negligence may consist either in <u>doing</u> something that a reasonably careful person would <u>not</u> do under like circumstances, or in <u>failing</u> to do something that a reasonably careful person <u>would</u> do under like circumstances.

Negligence is a "legal cause" of injury or damage if it directly and in natural and continuous sequence produces, or contributes substantially to producing such injury or damage, so it can reasonably be said that, but for the negligence, the injury or damage would not have occurred.  In order to be regarded as a legal cause of the injury or damage, negligence need not be the only cause.  Negligence may be a legal cause of injury or damage even though it operates in combination with the act of another, some natural cause or some other cause if such other cause occurs at the same time as the negligence and if the negligence contributes substantially to producing such loss, injury or damage.

In considering Plaintiff's negligence claim, you should also follow the instructions I have previously given you with respect to the learned intermediary doctrine (and its impact on the element of legal cause), duty to warn and the adequacy of warnings.

*Authority*:   Eleventh Circuit Pattern Jury Instructions (Civ.) (2005), State Claims 1.1 (modified to apply to prescription drug and as per stipulated legal issues); Fla. Standard Jury Instruction 5.1(a), (b) (Florida standard jury charge for "legal cause").; see also  FSJI Model Charge 8; West v. Caterpillar Tractor Co., 336 So. 2d 80, 86 (Fla. 1976) ("At the heart of each theory [of product liability] is the requirement that the plaintiff's injury must have been caused by some **defect** in the product"); Royal v. Black & Decker Mfg., 205 So. 2d 307, 309 (Fla. 3d DCA 1967) (same).

**Plaintiff's objection:  Plaintiff objects to the inclusion of the bracketed language because it is unsupported by Eleventh Circuit  Pattern Jury Instructions, the Florida Standard Jury Instructions, and Florida case law.  It is also slanted towards Defendant and may lead to jury confusion.**

**Defendant's objection:  Defendant objects to instructions and a verdict form that submit the issue of negligence to the jury in addition to the strict liability issues set forth in earlier instructions,  because instructions on negligence are superfluous, confusing to the jury and could potentially result in an inconsistent verdict . See generally Fla. Std. Jury Instr. PL Notes On Use ("In cases involving claims of both negligence and defective design, submission of both claims may result in an inconsistent verdict") (citing, inter alia, Consolidated Aluminum v. Braun, 447 So. 2d 391 (Fla. 4th DCA 1984) ("in some cases, such as this one where all the allegations of negligence are dependent upon proof of a defect, there is no practical difference between the two theories. Since the jury found no defect, we hold that it was inconsistent to find negligence on the part of Consolidated based on the pleadings and the proof at trial"); N. Am. Catamaran Racing v. McCollister, 480 So. 2d 669 (Fla. 5th DCA 1985) (verdict finding no defect, but finding negligence was fatally inconsistent)); see also Siemens Energy & Automation v. Medina, 719 So. 2d 312, 315 (Fla. 3d DCA 1998) (same) Anheuser-Busch, Inc. v. Lenz, 669 So. 2d 271 (Fla. 5th DCA 1996) (same) Terex Corp. v. Bell, 689 So. 2d 1122, 1123 (Fla. 5th DCA 1997) (same).  Defendant further objections to giving the instruction without the bracketed language.**

**Given** _____
**Given as Modified** _____
**Denied** _____
**Withdrawn** _____

40

## JOINT REQUESTED INSTRUCTION NO. 21
### (Fraud/Intentional Misrepresentation)

In this case, the Plaintiff further claims that the Defendant committed fraud on the Plaintiff's prescribing medical providers – that the Defendant made certain allegedly false and fraudulent misrepresentations to the Plaintiff's prescribing medical providers on which they allegedly relied in prescribing Seroquel for the Plaintiff, which allegedly resulted in the Plaintiff's injury and damages.

The term "fraud" is generally defined in the law as an intentional misrepresentation of existing material  fact made by one person to another with knowledge of its falsity; made for the purpose of inducing the other person to act; and upon which the other person does in fact rely with resulting injury or damage.  Fraud may also include an omission or intentional failure to state material facts, knowledge of which would be necessary to make other statements by the Defendant not materially misleading to the Plaintiff's prescribing medical providers.

To prevail on this claim of fraud in this case, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

<u>First</u>:   That the Defendant intentionally made one or more misrepresentations or omissions to the Plaintiff's prescribing medical providers;

<u>Second</u>:  That the misrepresentation or omission related to an existing material fact;

41

| Third: | That the Defendant knew, at the time the representation was made, that it was false or acted with reckless disregard for its truth or falsity, or that the omission made other statements materially misleading; |
| --- | --- |
| Fourth: | That the Defendant intended to induce the Plaintiff's prescribing medical providers to rely and act upon the misrepresentation or omission in prescribing Seroquel for the Plaintiff; |
| Fifth: | That the Plaintiff's prescribing medical providers relied upon the misrepresentation or omission in prescribing Seroquel for the Plaintiff; and |
| Sixth: | That the Plaintiff suffered injury or damage as a result of the detrimental reliance of the Plaintiff's prescribing medical providers on the Defendant's misrepresentation or omission. |

To make a "misrepresentation" simply means to state as a fact something that is false or untrue. To make a material "omission" is to omit or withhold the statement of a fact, knowledge of which is necessary to make other statements not materially misleading.

To constitute fraud, then, a misrepresentation must not only be false or an omission must not only make other statements materially misleading, but the misrepresentation or omission must also pertain to an "existing" fact and must also be "material" in the sense that it relates to a matter of some importance or significance rather than a minor or trivial detail. A "material" fact is one that is of such importance that the

42

Plaintiff's prescribing medical providers would not have prescribed Seroquel for the Plaintiff but for the false statement.

To constitute fraud, the Plaintiff must also prove that the Defendant made the misrepresentation or omission knowingly and intentionally, not as a result of mistake or accident. It must be proved that the Defendant either knew of the falsity of the misrepresentation, or the false effect of the omission, or that the Defendant made the misrepresentation in reckless disregard for its truth or falsity.

Finally, to constitute fraud the Plaintiff must prove that the Defendant intended for the Plaintiff's prescribing medical providers to rely upon the misrepresentation or omission in prescribing Seroquel; that the Plaintiff's prescribing medical providers did in fact rely upon the misrepresentation or omission in prescribing Seroquel for Plaintiff; and that the Plaintiff suffered injury or damage as a proximate result of the fraud.

An injury or damage is the proximate or legal result of the fraud if you find from a preponderance of the evidence that, but for the fraudulent misrepresentation, the injury or damage would not have occurred. In order to be regarded as the proximate or legal result of injury or damage, fraudulent misrepresentation need not be the only cause. The fraudulent misrepresentation may be a proximate or legal cause of injury or damage even though the act operates in combination with the act of another, some natural cause, or some other cause so long as the fraud contributes substantially to producing the injury or damage.

43

In considering Plaintiff's fraud claim, you should also follow the instructions I have previously given you with respect to the learned intermediary doctrine (and its impact on the element of legal cause), duty to warn and the adequacy of warnings.

*Authority*:   See Eleventh Circuit Pattern Jury Instructions (Civ.) (2005), State Claims 2.1 (as modified per stipulated legal issues, and to fit Plaintiff's theory of fraud on plaintiff's prescribers); Fla. Standard Jury Instruction MI 8.1(a) (modified for prescription drug case and adapted to format of Eleventh Circuit Pattern instruction); see also, e.g., Hasenfus v. Secord, 962 F.2d 1556, 1561-62 (11th Cir. 1992); Soler v. Secondary Holdings, Inc., 771 So. 2d 62, 69-70 (Fla. App. 2000); Beale v. Biomet, Inc., 492 F. Supp. 2d 1360, 1372-72, 1374-75 (S.D. Fla. 2007); Alexander v. Danek Med. Inc., 37 F. Supp. 2d 1346, 1350 (M.D. Fla. 1999); accord Allison v. McGhan Med. Corp., 184 F.3d 1300, 1307-09 (11th Cir. 1999).

**Given**                          _____
**Given as Modified**     _____
**Denied**                       _____
**Withdrawn**                 _____

44

## JOINT REQUESTED INSTRUCTION NO. 22
### (Negligent Misrepresentation)

In this case, the Plaintiff also claims that the Defendant made certain allegedly negligent misrepresentations to the Plaintiff's prescribing medical providers on which they allegedly relied in prescribing Seroquel for the Plaintiff, which allegedly resulted in the Plaintiff's injury and damages.

The term "negligent misrepresentation" is generally defined in the law as a misrepresentation of material existing fact made by one to another when the representer should have known that the statement was false; made for the purpose of inducing the other person to rely upon it; and upon which the other person does in fact rely resulting in injury or damage.

To prevail on this claim of negligent misrepresentation in this case, the Plaintiff must prove each of the following facts by a preponderance of the evidence:

First: That the Defendant made one or more misrepresentations to the Plaintiff's prescribing medical providers;

Second: That the misrepresentation related to an existing material fact;

Third: That the Defendant was negligent in making the representation because the Defendant should have known the representation was false;

Fourth: That the Defendant intended to induce the Plaintiff's prescribing medical providers to rely upon the misrepresentation in prescribing Seroquel for the Plaintiff;

45

14390384.4

Fifth:    That the Plaintiff's prescribing medical providers relied upon the

misrepresentation in prescribing Seroquel for the Plaintiff; and

Sixth:    That the Plaintiff suffered injury or damage as a result of the

detrimental reliance of the Plaintiff's prescribing medical providers on

the Defendant's misrepresentation.

To make a "misrepresentation" simply means to state as a fact something that is

false or untrue.

To constitute negligent misrepresentation, then, a misrepresentation must not only

be false, but the misrepresentation must also pertain to an "existing" fact and must also be

"material" in the sense that it relates to a matter of some importance or significance rather

than a minor or trivial detail. A "material" fact is one that is of such importance that

Plaintiff's prescribing medical providers would not have prescribed Seroquel for Plaintiff

but for the negligent misrepresentation.

Plaintiff also must prove the Defendant acted negligently in making the

misrepresentation. Negligence is the failure to use reasonable care. Reasonable care is

that degree and care which a reasonable person would use under like circumstances.

Negligence may consist either in doing something which a reasonably careful person

would not do under like circumstances or in failing to do something that a reasonably

careful person would do under like circumstances.

Finally, to constitute negligent misrepresentation, the Plaintiff must prove that the

Defendant intended for the Plaintiff's prescribing medical providers to rely upon the

misrepresentation in prescribing Seroquel for the Plaintiff; that the Plaintiff's prescribing

46

medical providers did in fact rely upon the misrepresentation in prescribing Seroquel for Plaintiff; and that the Plaintiff suffered injury or damage as a proximate result of the misrepresentation.

An injury or damage is the proximate or legal result of the negligent misrepresentation if you find from a preponderance of the evidence that, but for the negligent misrepresentation, the injury or damage would not have occurred.  In order to be regarded as the proximate or legal result of  injury or damage, negligent misrepresentation need not be the only cause.  The negligent misrepresentation may be a proximate or legal cause of injury or damage even though the act operates in combination with the act of another, some natural cause, or some other cause so long as the negligent misrepresentation contributes substantially to producing the injury or damage.

In considering Plaintiff's negligent misrepresentation claim, you should also follow the instructions I have previously given you with respect to the learned intermediary doctrine (and its impact on the element of legal cause), duty to warn and the adequacy of warnings.

*Authority*:      <u>See</u> Eleventh Circuit Pattern Jury Instructions (Civ.) (2005), State Claims 3.1 (as modified per stipulated legal issues, and to fit Plaintiff's theory of negligent

misrepresentation made to Plaintiff's prescribers); <u>accord</u> Fla. Standard Jury Instruction MI 8.1(b) (modified for prescription drug case and adapted to format of Eleventh Circuit Pattern instruction; definition of materiality under Florida law); Fla. Standard Jury Instruction 4.1, 5.1; <u>see also</u>, <u>e.g.</u>, <u>Beale v. Biomet Inc.</u>, 492 F. Supp. 2d 1360, 1374-75 (S.D. Fla. 2007).

**Given**                                   _____
**Given as Modified**         _____
**Denied**                             _____
**Withdrawn**                    _____

48

## DEFENDANTS' REQUESTED INSTRUCTION NO. 23*
### (Off-Label)

In this case, Plaintiff was prescribed Seroquel for an "off label" use – that is, a use or purpose not approved by the FDA. A physician or other medical provider may properly prescribe a prescription drug for a use or purpose other than that approved by the FDA.

**\*NOTE:**     **This instruction is only requested to be given in cases where the plaintiff was prescribed Seroquel "off label"**

*Authority*:     Upjohn Co. v. MacMurdo, 562 So. 2d 680, 683 (Fla. 1990); Edmonds v. Levine, 417 F. Supp. 2d 1323, 1327 n. 4 (S.D. Fla. 2006); Baker v. Danek Med., Inc., 35 F. Supp. 2d 875, 878 (N.D. Fla. 1999); Beale v. Biomet Inc., 492 F. Supp. 2d 1360, 1372 (S.D. Fla. 2007); Edgar v. Danek Med., Inc., 1999 WL 1054884, \*6 (M.D. Fla. Mar. 31, 1999); see also Talley v. Danek Med., Inc., 179 F.3d 154, 161 (4th Cir. 1999); Samarah v. Danek Med., Inc., 70 F. Supp. 2d 196, 1206-09 (D. Kan. 1999); Sita v. Danek Med., Inc., 43 F. Supp. 2d 245, 264-65 (E.D.N.Y. 1999).

*Plaintiff's objection*:  **Plaintiff objects to this instruction as unsupported by either the Eleventh Circuit Pattern Jury Instructions or the Florida Standard Jury Instructions. It is also irrelevant and superfluous to any legal claim in any case, slated towards Defendants, and invites jury confusion.**

**Given**      _____

14390384.4